UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAQUETTA SHAW** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14778** |
| **CIOX HEALTH, LLC** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is Defendant Ciox Health, LLC's Motion for Summary Judgment (Doc. 70) and Plaintiff Jaquetta Shaw's Motions for Summary Judgment (Docs. 31, 33). For the following reasons, Defendant's Motion is **GRANTED**, and Plaintiff's Motions are **DENIED**.

### BACKGROUND

Defendant Ciox Health, LLC ("Ciox Health") is a health information management company that assigns employees to its customers' sites to retrieve, image, and transmit health information for providers and patients.[1]

---

[1] Doc. 70-1 at 6.

One such site is Tulane University Hospital and Clinic ("Tulane"), whose partner Parallon Business Performance Group ("Parallon") contracted with Ciox Health to handle the processing of health information at Tulane. Plaintiff Jaquetta Show started working for Ciox Health as a Release of Information Specialist I at the Tulane site on July 2, 2012. As part of her job, Plaintiff printed and processed all types of requests for medical records. In April of 2016, Ciox Health promoted Plaintiff to Client Service Representative II. On November 4, 2016, Ciox Health terminated Plaintiff's employment.

Plaintiff filed this *pro se* action against Ciox Health, alleging discrimination under Title VII and 42 U.S.C. § 1981. Specifically, Plaintiff alleges that Ciox Health denied her a wage increase during the period of December 2013 to April 2016, despite giving an increase to her co-worker Jennie Giraud, whose self-identified race is different than Plaintiff's.[2] Plaintiff further alleges that Ciox Health discriminated against her by terminating her employment.

After this Court's Order and Reasons on Defendant's Motion to Dismiss,[3] Plaintiff has three claims remaining: (1) a claim of racial discrimination in violation of Title VII based on Plaintiff's termination, (2) a claim of racial discrimination in violation of § 1981 based on the termination, and (3) a claim of racial discrimination in violation of § 1981 for denial of a wage increase.[4]

---

[2] Plaintiff is an African American, and Ciox Health's human resources records reflect that Ms. Giraud self-identifies as "Hispanic or Latino." Doc 33-2 at 2; Doc. 70-1 at 20; Doc. 70-2 at 125.

[3] Doc. 17.

[4] Plaintiff's two Motions for Summary Judgment include an alleged violation of her 14th Amendment Equal Protection rights, despite her Complaint containing no such claim. Docs.

The Court will first consider the termination claims and then the wage denial claim.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor.[7] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9] "In response to a

---

31 at 3; 33-2 at 3, 1. The Court will disregard this 14th Amendment claim because a plaintiff may not raise a new claim in a brief at the summary judgment stage. XL Specialty Ins. Co. v. Bollinger Shipyards, Inc., No. 12-2071, 2014 WL 994665, at *6 (E.D. La. Mar. 13, 2014) (Vance, J.).

[5] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[7] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[8] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[10] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

## LAW AND ANALYSIS

### I. Termination Claims

If Plaintiff has no direct evidence and only circumstantial evidence of racial discrimination, then the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), governs her termination claims under Title VII and § 1981. Direct evidence "includes any statement or written document showing a discriminatory motive on its face."[13] Plaintiff claims to have direct evidence of racial discrimination in the form of signed statements from former site supervisor Julie Adams and regional manager Yolanda Gunner.[14] Neither signed statement shows discriminatory motive.

---

[10] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[11] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[12] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[13] Portis v. First Nat. Bank of New Albany, 34 F.3d 325, 329 (5th Cir. 1994).

[14] Doc. 33-2 at 1 ("The plaintiff have [sic] direct evidence from her than [sic] Regional Manager and Site Supervisor.").

Both statements show that Ms. Adams and Ms. Gunner worked with Plaintiff, received no complaints or reprimands regarding her, and thought highly of her work product and demeanor. Neither statement even references Plaintiff's termination, much less reflects a discriminatory motive.

Accordingly, the *McDonnell Douglas* framework applies to Plaintiff's termination claims. Under this framework, Plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination, which requires showing that she: (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of her protected class.[15] If Plaintiff makes this initial showing, then the burden shifts to Ciox Health to present a legitimate, non-discriminatory reason for terminating Plaintiff.[16] Finally, if Ciox Health can present as much, then Plaintiff must offer sufficient evidence to create a genuine issue of material fact that either (1) Ciox Health's proffered reason is pretextual or (2) its reason, while true, is only one of the reasons for the termination, and another motivating factor is Plaintiff's race.[17]

For summary judgment purposes, Ciox Health concedes that Plaintiff can meet all but the fourth element of the prima facie case for her termination claims.[18] Thus, if Plaintiff can demonstrate an absence of genuine issues as to whether Ciox Health treated more favorably a similarly situated employee

---

[15] Bryan v. McKinsey & Co., 375 F.3d 358 (5th Cir. 2004).
[16] Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007).
[17] *Id.* at 411–12.
[18] Doc. 70-1 at 25 n.10.

outside of the Plaintiff's protected class, then she will have made her prima facie case for the summary judgment stage. Employees are similarly situated when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[19] Critically, Plaintiff's conduct that triggered her termination must have been "nearly identical" to that of her comparator who drew a dissimilar employment decision from Ciox Health.[20]

Relevant to this similarly situated analysis, Plaintiff argues, "Plaintiff and her comparator Jenni [sic] Giraud both allegedly violated Ciox Health policy and/or had conduct issues but plaintiff comparator was able to resign while plaintiff was fired."[21] Ciox Health counters that Ms. Giraud is not similarly situated because she had different job responsibilities, had her employment status determined by a different person, and departed Ciox Health under different circumstances.[22]

Plaintiff has failed to put forth evidence that she and Ms. Giraud are similarly situated. In fact, there are relevant dissimilarities between Plaintiff's circumstances and those of Ms. Giraud. Plaintiff had her employment status determined by Aliya Khan, HR Business Partner with Ciox Health, and Kurt Lewis, Vice President of Operations with Ciox Health.[23] By contrast, Ms.

---

[19] Lee v. Ks. Cty. S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221–22 (5th Cir. 2001); Barnes v. Yellow Freight Sys., Inc., 778 F.2d 1096, 1101 (5th Cir. 1985); Okoye v. Univ. of Tex. Houston Health Sci., 245 F.3d 507, 514 (5th Cir. 2001)).
[20] *Id.* (citing Perez v. Tex. Dep't of Criminal Just., 395 F.3d 206, 213 (5th Cir. 2004).
[21] Doc. 33-2 at 1.
[22] Doc. 70-1 at 25–26.
[23] Doc. 70-2 at 133–41.

Giraud emailed her resignation to Yolanda Gunner, Regional Manager of Operations at Ciox Health.[24] Thus, it is not the case that Plaintiff and her comparator "had their employment status determined by the same person" according to Plaintiff's evidence.[25]

More importantly, Plaintiff's conduct prior to termination and Ms. Giraud's conduct preceding her resignation are not "nearly identical."[26] Michelle Moore and Shelly Lee, two representatives from one of Ciox Health's customers, Parallon, requested that Ciox Health remove Plaintiff from the Tulane worksite after learning of a pattern of uncooperative and combative behavior from Plaintiff.[27] After that request, Ms. Khan and Mr. Lewis terminated Plaintiff. By contrast, Ciox Health allowed Ms. Giraud to resign after taking home confidential files in violation of HIPAA and company policy.[28] Thus, the two employment decisions from Ciox were not precipitated by nearly identical misconduct.[29]

Even assuming that Plaintiff can satisfy this fourth element of her prima facie case, she cannot show a genuine issue as to whether Ciox Health's proffered reasons are either pretextual or additional to other, race-based ones.

---

[24] Doc. 31-8 at 4–5.
[25] *Lee*, 574 F.3d at 260.
[26] *Id.*
[27] Doc. 70-2 at 133–41.
[28] Doc. 31-8 at 4–5.
[29] *Cf.* Bouie v. Equistar Chemicals LP, 188 Fed. Appx. 233, 237 (5th Cir. 2006) (employees who violated fewer protocols than plaintiff were not proper comparators, and employees who engaged in misconduct different than plaintiff's were also irrelevant to establishing the prima facie case of discrimination); Dodge v. Hertz Corp., 124 Fed. Appx. 242, 244 (5th Cir. 2005) (that one could consider plaintiff's and potential comparator's acts as "dishonest" was insufficient to make their misconduct nearly identical).

Ciox Health maintains that it terminated Plaintiff because one of its customers requested her removal from the Tulane workplace on account of her history of combative behavior and complaints concerning her attitude and demeanor.[30] Indeed, the document evidencing termination that Plaintiff attached to her Motions supports this rationale, as it reads, "Customer recommended associates [sic] removal from their account. We are unable to place Jaquetta at another facility at this time."[31] The customer was Parallon. One of its employees, Shelly Lee, the Regional Director of Health Information Management, visited Plaintiff's worksite on October 27, 2016. During this visit, Ms. Lee learned of an incident that caused another Ciox Health employee to feel threatened by Plaintiff and to switch from full time to part time as a result.[32] Additionally, Ms. Lee learned that "[Plaintiff's] customer service skills are lacking and she has been disrespectful and uncooperative in the past."[33]

The record contains ample evidence of these past instances of improper behavior by Plaintiff. First, Sheila Gordon, a Tulane employee, initially alerted Ms. Lee to the problems with Plaintiff after an incident that occurred at a meeting between Ms. Gordon and other Ciox Health employees, including Plaintiff.[34] The meeting pertained to a complaint from a patient concerning a mishandled request for records, and when Ms. Gordon expressed concern as to the handling of the request, Plaintiff became "defensive and disrespectful."[35]

---

[30] Docs. 70-1 at 9–11; 70-2 at 133–41.
[31] Docs. 33-1 at 4; 33-6 at 2.
[32] Doc. 70-2 at 134.
[33] *Id.*
[34] *Id.* at 140–41.
[35] *Id.* at 140.

Plaintiff attempts to controvert this fact with an "incident report" of the complaint that reflects that "Shauna not Jaquetta" was responsible for the botched request.[36] From the nature of this defense, it is clear that Plaintiff partly misunderstands the grounds for her termination. It was not only that she was responsible for a patient complaint, but rather that she acted unprofessionally when confronted with a concern about how she and others handled a records request.

The next incident in Plaintiff's history of misconduct occurred on May 10, 2016, when Plaintiff surreptitiously recorded a conversation on her phone between herself and Ciox Health Operations Manager Jeannine Smith in violation of company policy.[37] Plaintiff was issued a "Final Warning" as a result of this infraction.[38]

Before this incident, in February 2016, Plaintiff "became very disruptive and began calling out other employees" during a team phone call.[39] Another employee described how "the call became very confrontational and nearly physical between Jaquetta and Jennie."[40] During Plaintiff's deposition, she

---

[36] Docs. 87 at 1; 87-2 at 4. The referenced document does specifically mention "Shawna," but it also indicates that the individual who filed the complaint interacted with other unnamed employees, one of which may have been Plaintiff. Doc. 87-2 at 4 ("He sated [sic] he did try to fill out a request but *they* would not take it and was told to fax a request to 504-988-1749. . . . If I had been *either of the ROI folks*, I would have checked to see if the request had been entered . . . .") (emphasis added).

[37] Doc. 70-2 at 128–30.

[38] *Id.*

[39] *Id.* at 128.

[40] *Id.* at 126.

9

"recall[e]d some incidents" with Ms. Giraud, including how she "probably" raised her voice at Ms. Giraud at work.[41]

Ciox Health presents other examples of Plaintiff's combativeness in the workplace that date back to 2015 and 2013.[42] Each of these incidents of uncooperativeness violated Ciox Health's policy requiring employees to work in a "professional, productive, positive, supportive and cooperative manner."[43] Plaintiff's offer of employment and acknowledgment form from Ciox Health specified that her employment relationship with Defendant was at will.[44] Thus, Ciox Health was entitled to terminate Plaintiff at any time, and its justification for doing so—a customer's request for relocation coupled with her behavioral issues—suffices to shift the burden back to Plaintiff to reveal this justification as either pretextual or additional to other, race-based reasons.

Plaintiff has no evidence that undermines Ciox Health's alleged motivations for her termination. First, using Tulane's position statement submitted to the EEOC, Plaintiff misidentifies the referenced "customer" who requested her relocation as Tulane, when it was really Parallon.[45] Furthermore, Tulane's statement does not speak to Ciox Health's reasons for termination and so is irrelevant. Second, Plaintiff includes text messages between Ms. Giraud and Ms. Adams to prove that the former did not change her work hours because of Plaintiff, but that fact has no bearing on summary

---

[41] Doc. 70-3 at 47–48.
[42] Doc. 70-2 at 106–08, 114–27.
[43] Doc. 70-3 at 81.
[44] *Id.* at 79–80, 82.
[45] Doc. 87-1 at 10.

10

judgment. Third, Plaintiff points to evidence of her productivity during several months of 2016, including at the time the patient lodged a complaint.[46] However, Ciox Health did not justify its termination of Plaintiff for her lack of productivity. Rather, it identified Parallon's request and her history of infractions.[47] Evidence of productivity does not controvert the facts regarding Ciox Health's reasons for termination. More importantly, evidence of productivity creates no genuine issue as to whether Ciox Health terminated Plaintiff because of her race.

The same can be said of the various affidavits from Ms. Adams and Ms. Gunner.[48] That these two women had positive impressions of Plaintiff's attitude and productivity does not controvert the documented incidents that Ciox Health presents. Notably, neither Ms. Adams nor Ms. Gunner was involved in any of Plaintiff's instances of misconduct, so their statements do not raise genuine issues as to Ciox Health's reasons for termination.

Plaintiff has no evidence to support her claim that Ciox Health's "reason are [sic] false they are pretext."[49] A subjective belief as to the discriminatory motive of an employment decision is insufficient to create an inference of pretext.[50] Thus, Ciox Health is entitled to summary judgment as to Plaintiff's termination claims.

---

[46] Docs. 87 at 1; 87-2 at 6; 31-3 at 5–14.
[47] Docs. 70-1 at 9–11; 70-2 at 133–41.
[48] Docs. 31-3 at 2, 3; 87-3 at 2.
[49] Doc. 87 at 2.
[50] Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College, 414 Fed. Appx. 630 (5th Cir. 2011).

## II. Denial of Wage Increase Claim

Plaintiff's remaining claim is for a violation of § 1981 based on Ciox Health's alleged denial of a wage increase. There is no direct evidence of such a denial, so the same burden-shifting framework analyzed above applies to this claim as well. In fact, there is little evidence that Ciox Health denied Plaintiff a wage increase while granting one to Ms. Giraud. Even Plaintiff herself is inconsistent on the facts: in one place she states, "The comparator Jenni [sic] Giraud received a raise in February 2016," and in another place she says, "Jenni [sic] Giraud received a $2.25 cent raise in January 2016."[51] Plaintiff submits no evidence as to when Ms. Giraud received a raise, and pay stubs from Ciox Health reflect that Plaintiff received four increases to her wage during her employment, including one in February 2016.[52]

Furthermore, in Plaintiff's Complaint she admits, "I asked Jennifer Lombard for a raise she kept giving excuses as to why she couldn't. She than [sic] told me she could give me a little something but I couldn't tell anyone. Jennifer Lombard would put 2 extra hours on my check."[53] This arrangement, corroborated by email evidence,[54] casts doubt on the claim that Ms. Lombard denied Plaintiff a wage increase for reasons related to race. Even abstracting from Ms. Lombard's secretive arrangement, Plaintiff has no evidence that the "excuses" she was given were pretextual or additional to race-based ones.[55]

---

[51] Docs. 31-10 at 1; 87 at 1.
[52] Docs. 70-4, 70-5, 70-6, 70-7.
[53] Doc. 1 at 7.
[54] Doc. 1-2 at 2.
[55] Doc. 70-3 at 60–62.

12

Accordingly, Ciox Health is entitled to summary judgment as to the claim for denial of a wage increase.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 70) is **GRANTED**, and Plaintiff's Motions for Summary Judgment (Docs. 31, 33) are **DENIED**.

New Orleans, Louisiana this 8th day of September, 2021.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**